Case 4:20-cv-01782   Document 1-1   Filed on 05/21/20 in TXSD   Page 1 of 11

5/21/2020 4:17 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 43161248
By: Rhonda Momon
Filed: 5/21/2020 4:17 PM

CAUSE NO. _____

| | | |
|---|---|---|
| CHARLES E. FOERSTER, § | | In the District Court |
| § | | |
| Plaintiff § | | |
| § | | |
| -v- § | | |
| § | | ___ Judicial District |
| AUSTIN BLEESS, in his Individual § | | |
| and Official Capacity, and CITY OF JERSEY § | | |
| VILLAGE, TEXAS. § | | |
| § | | |
| Defendants. § | | Harris County, Texas |

## PLAINTIFF CHARLES E. FOERSTER'S ORIGINAL PETITION, REQUEST FOR DISCLOSURE, AND JURY DEMAND

The City of Jersey Village and its City Manager, Austin Bleess, fired former Police Chief Charles E. Foerster because he engaged in protected speech – violating Foerster's state and federal constitutional rights.

Foerster served as the Chief of Police for Jersey Village for nine years. Within the Police Department, the City government, and the community, Foerster was seen as a dedicated leader who department staff and other department heads looked up to. He understood his job well and did a great job motivating his employees.

On or about September 13, 2019, Foerster learned that a Jersey Village City Councilmember, James Singleton, had violated the City Charter by interfering in a Police Department personnel matter. Officer Mark Zatzkin was facing discipline and blackmailed Singleton to get his discipline reduced.

Zatzkin was in possession of a memorandum he had written describing the circumstances surrounding Singleton being forced to resign from the Police Department in 2008, prior to his

PLAINTIFF'S ORIGINAL PETITION, REQUEST FOR DISCLOSURE, & JURY DEMAND -- Page 1

**EXHIBIT A**

Unofficial Copy

election to City Council. Specifically, the memorandum detailed how Singleton had used police computers to watch pornography and masturbated in patrol cars.

Foerster contacted the City Manager as soon as he learned Singleton was interfering in Zatzkin's personnel matter and, therefore, violating the City Charter. When the City Manager failed to take action, Foerster put his concerns in writing. Two days later, the City Manager suspended Foerster.

The next day, Foerster went outside the chain of command and, as a citizen, communicated his concerns about the blackmail and Singleton's violation of the City Charter to the City Council and the Mayor of Jersey Village. Foerster was speaking out as a private citizen on a matter of public concern, and his speech is entitled to protection under both the U.S. and the Texas State Constitutions.

Defendants terminated Foerster as a direct result of his protected speech.

I.
DISCOVERY CONTROL PLAN

1. Plaintiff intends that this suit be governed by discovery control level two.

2. The party seeks monetary relief over $200,000 but not more than $1,000,000.

II.
PARTIES

3. Plaintiff Charles E. Foerster is an individual who resides in Harris County, Texas.

4. Defendant Austin Bleess is the City Manager for the City of Jersey Village, Texas. Bleess is sued in his individual capacity and in his official capacity as the administrative head of the City and may be served with process at 16327 Lakeview Dr., Jersey Village, Texas 77040, or wherever he may be found.

5. Defendant City of Jersey Village is a local governmental entity in Harris County that may be served with process by serving its mayor, Andrew Mitcham, at 16327 Lakeview Dr., Jersey Village, Texas 77040, or wherever he may be found.

### III.
### JURISDICTION AND VENUE

6. Jurisdiction is appropriate because Defendants reside in Harris County, Texas, and Defendant City of Jersey Village has its principal place of business in Harris County, Texas. Jurisdiction over violations of the U.S. Constitutional violations is established through the procedural vehicle of 42 U.S.C. § 1983. Jurisdiction over the state constitutional claims is provided by *City of Beaumont v. Bouillion*, 896 S.W.2d 143 (Tex. 1995).

7. Venue is appropriate pursuant to Section 15.002(a)-(b) of the Texas Civil Practice and Remedies Code because the events giving rise to this lawsuit occurred in Harris County, Texas.

8. The damages sought are within the jurisdictional limits of the court.

### IV.
### FACTS

**Charles E. Foerster was a dedicated leader serving as the Police Chief of the City of Jersey Village for nine years.**

9. Charles E. Foerster first started working for the City of Jersey Village as its Chief of Police in November 2010.

10. Foerster also served as Interim City Manager for Jersey Village from December 2016 to March 2017.

11. Foerster always gave his best efforts to the City and had no disciplinary history prior to his termination on November 25, 2019.

12. Indeed, the City's most recent review of Foerster's performance was excellent – 4.8 on a 5-point scale.

13. In that review, the City Manager, Austin Bleess, stated: "Chief understands his job well, and does a great job of motivating his employees. PD Staff and other Dept Heads look up to the Chief."

14. The review provided no areas that needed improvement.

15. As a result of the excellent performance review, Bleess gave Foerster a four percent salary increase, which constituted "stepping outside of the normal percentage ranking."

**In November 2008, James Singleton was forced to resign from the Jersey Village Police Department after an investigation concluded he had watched pornography on police computers and masturbated in patrol cars. Singleton was subsequently elected to City Council.**

16. James Singleton worked as a police officer for Jersey Village from May to November 2008.

17. Singleton was forced to resign from the Police Department after an investigation concluded he used police computers to watch pornography and masturbated in patrol cars.

18. Singleton was then elected to the Jersey Village City Council in or around May of 2018.

19. After Singleton was elected to City Council, on July 2, 2018, Officer Mark Zatzkin wrote a memorandum detailing the circumstances surrounding Singleton's ignominious resignation from the Police Department.

20. Zatzkin submitted the memo to Chief Foerster.

21. Shortly after, Foerster met with City Manager Bleess to discuss Zatzkin's memo.

Unofficial Copy

22. After reading the memo, Bleess slid it back across the desk to Foerster and said: "I don't want this, and if this memo ever finds its way to the public, you'll be terminated."

**Officer Mark Zatzkin violated the Police Department's use of force policy and was facing a demotion and probation.**

23. On or about August 27, 2019, Zatzkin failed to immediately render aid after a use of force.

24. This failure violated the Jersey Village Police Department's use of force policy.

25. An Internal Affairs investigation into Zatzkin's failure was conducted on or about September 9, 2019.

26. The investigation concluded Zatzkin had violated the policy and should be demoted from Corporal to Patrolman and be placed on probation.

27. Upon notification of the investigation's findings and resulting discipline, Zatzkin reminded Foerster that he had the memo about why Singleton was forced to resign from the Police Department and stated that he would take the memo to Singleton and use it to make Singleton fix things.

28. On September 10, 2019, Zatzkin filed a formal appeal of his discipline to the Chief Foerster.

29. After careful review and consideration, Foerster denied Zatzkin's appeal and upheld the discipline.

**Councilmember James Singleton interfered in Zatzkin's personnel matter in violation of the City Charter.**

30. On or about September 13, 2019, Singleton directly contacted the officer who had reported Zatzkin's use of force violation, Danny Keele.

31. Keele informed Foerster that Singleton had called him to ask about the incident.

Unofficial Copy

32. On or about that same day, City Manager Bleess reversed Foerster's denial of Zatzkin's appeal. This reversal resulted in Zatzkin not being demoted.

33. Based on Zatzkin's prior statement about using the memo as leverage and the fact that Singleton had called the reporting officer, Foerster concluded that Zatzkin likely did blackmail Singleton – using the memorandum he had written detailing the reasons Singleton had been forced to resign as leverage to force Singleton to improperly influence Bleess to reverse the denial of Zatzkin's appeal.

**Foerster reported his concerns about Councilmember Singleton violating the City Charter by interfering in Zatzkin's personnel matter to Bleess.**

34. On September 13, 2019, Foerster verbally communicated his concerns about Councilmember Singleton violating the City Charter by interfering in Zatzkin's personnel matter to Bleess.

35. Section 2.08 of the City Charter prohibits councilmembers from interfering in administrative or personnel matters: "Neither the council nor any of its members shall instruct or request the city manager or any of the city manager's subordinates to appoint to or remove from office or employment any person."

36. Two days later, on September 15, 2019, Foerster followed up on the matter with an email to Bleess specifically stating he believed (1) Zatzkin had blackmailed Singleton and (2) Singleton had then interfered in Zatzkin's personnel matter.

37. Two days later, on September 17, 2019, Bleess suspended Foerster citing a laundry list of alleged issues dating back to June 2018.

Unofficial Copy

**Foerster spoke out as a private citizen on a matter of public concern when he informed the Jersey Village City Council and Mayor that Councilmember Singleton had likely been blackmailed and violated the City Charter as a result.**

38. After being suspended, Foerster spoke out as a private citizen on a matter of public concern when he informed the Mayor of Jersey Village and the City Council about Singleton's interference in Zatzkin's personnel matter.

39. Public corruption, abuse of office, and malfeasance are matters of public concern.

40. Foerster used his personal email address to email the City Council and the Mayor a copy of the email he had sent Bleess on September 15, 2019, outlining the violation of the City Charter.

41. Foerster also sent the City Council and the Mayor a copy of the memorandum Zatzkin likely used to blackmail Singleton.

42. Again, Foerster used his personal email address to send this document.

43. Foerster emailed the City Council while he was on suspension from his personal email on his own time.

**Defendants terminated Foerster because he engaged in protected speech.**

44. Defendants terminated Foerster on October 25, 2019.

45. The termination was a direct result of Foerster informing the Jersey Village Mayor and City Council of the likely blackmail of one of its members and resulting subsequent violation of the City Charter.

46. The termination occurred less than 40 days after Foerster engaged in protected speech.

47. As the City Manager, Bleess knew that terminating an employee for speaking out about violations of the City Charter violated Foerster's First Amendment rights.

_____
PLAINTIFF'S ORIGINAL PETITION, REQUEST FOR DISCLOSURE, & JURY DEMAND -- Page 7

Unofficial Copy

48. Furthermore, Bleess had the power to hire, fire, and make final personnel policy as it related to Foerster as the Chief of Police.

49. Bleess exercised his official power by terminating Foerster for speaking out about the likely blackmail of an elected official and that elected official's interference in personnel matter in violation of the City Charter.

50. On October 30, 2019, Foerster filed a formal written appeal of his termination, which was denied.

51. No other internal grievance procedures existed for Foerster to appeal the termination decision.

52. Therefore, all conditions precedent to the bringing of this lawsuit have been satisfied and fulfilled.

## V.
## FIRST AMENDMENT VIOLATIONS

53. Plaintiff incorporates all of the above paragraphs as if restated herein.

54. Plaintiff engaged in protected speech as a citizen concerning a matter of public concern when he went outside of his chain of command and his job responsibilities to report to the City Council and the Mayor that a member of the City Council had likely been blackmailed and violated the City Charter in response to that blackmail.

55. Defendants were motivated by Plaintiff's speech to terminate him.

56. Austin Bleess is individually liable through the procedural vehicle of 42 U.S.C. § 1983 because free speech is a clearly established constitutional right and is not subject to qualified immunity.

Unofficial Copy

57. The City of Jersey Village is liable through the procedural vehicle of 42 U.S.C. § 1983 because it officially adopted and promulgated the decision to terminate Foerster for engaging in protected speech.

58. The City is also liable because the decision to terminate Foerster was made by an official to whom the City had delegated policy-making authority.

59. Defendants violated the United States Constitution when it terminated Plaintiff for engaging in protected speech.

## VI.
## TEXAS CONSTITUTIONAL VIOLATIONS

60. Plaintiff incorporates all of the paragraphs as if restated herein.

61. Plaintiff engaged in protected speech as a citizen concerning a matter of public concern when he went outside of his chain of command and his job responsibilities to report to the City Council and the Mayor that a member of the City Council had likely been blackmailed and violated the City Charter in response to that blackmail.

62. Austin Bleess is individually liable because free speech is a clearly established constitutional right and is not subject to qualified immunity.

63. The City of Jersey Village is liable because it officially adopted and promulgated the decision to terminate Foerster for engaging in protected speech.

64. The City is also liable because the decision to terminate Foerster was made by an official to whom the City had delegated policy-making authority.

65. Defendants violated article 1, section 8 of the Texas Constitution when they terminated Plaintiff for engaging in protected speech.

Unofficial Copy

## VII.
## JURY DEMAND

66.     Plaintiff demands trial by jury and will tender the appropriate fee.

## VIII.
## REQUEST FOR DISCLOSURE

67.     Defendant is requested to disclose, within 50 days of service of this request the, the information and material described in Rule 194.2.

## IX.
## DAMAGES

68.     Plaintiff seeks all damages allowed under the law, including monetary damages relief over $200,000 but less than $1,000,000 and:

   (a)     injunctive relief;

   (b)     actual damages;

   (c)     punitive damages against the individual defendant because Defendant's actions were motivated by evil motive or intent, or reckless or callous indifference to Plaintiff's federally protected rights.

   (d)     court costs;

   (e)     reasonable attorney's fees;

   (f)     back pay, front pay, and other compensation for wages lost as a result of termination;

   (g)     emotional distress, mental anguish; and

   (h)     Plaintiff seeks pre- and post-judgment interest at the maximum rate allowed by law.

Unofficial Copy

WHEREFORE, premises considered, Plaintiff respectfully prays that Defendants be cited to appear and, that upon a trial on the merits, that all relief requested be awarded to Plaintiff, and for such other and further relief to which Plaintiff is justly entitled.

Respectfully submitted,

*/s/ Julie L. St. John*
Julie L. St. John
Texas Bar No. 24106460
Robert J. Wiley*
Texas Bar No. 24013750
*\*Board Certified in Labor and Employment Law
by the Texas Board of Legal Specialization*

WILEY WHEELER, P.C.
1651 Richmond Ave.
Houston, Texas 77006
Telephone: (713) 337-1333
Facsimile:  (713) 337-1334
jstjohn@wiley-wheeler.com

ATTORNEYS FOR PLAINTIFF

Unofficial Copy